IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAFE FOUNDATIONS, INC.; ROAD RUNNER PLANNING AND CONSULTING, INC.; ERIC BONONI. Chapter 7 Trustee,<br>                Plaintiffs,<br><br>vs.<br><br>METAL FOUNDATIONS ACQUISITIONS, LLC,<br>                Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 12-1177<br>) Magistrate Judge Maureen P. Kelly<br>)<br>) Re: ECF No. 8<br>) |

## MEMORANDUM ORDER

**Kelly, Magistrate Judge**

This case emanates from the sale of assets owned by various entities controlled by Gary L. Reinert, Sr. ("Reinert") while under the auspices of bankruptcy protection. Following the purchase of those assets by Defendant Metal Foundations Acquisitions, LLC ("MFA"), MFA initiated an adversarial proceeding by filing a Complaint in Equity against Reinert in the Court of Common Pleas of Allegheny County, Pennsylvania, alleging that Reinert had misappropriated confidential trade secrets that MFA had rightfully purchased in the asset sale and was interfering with MFA's contract relations. The Complaint in Equity was subsequently removed to the United States Bankruptcy Court for the Western District of Pennsylvania by consent of the parties. See Bankr. Adversary No. 11-ap-2656, Doc. No. 1.

Plaintiffs in this case are Safe Foundations, Inc. ("SFI"), Road Running Planning and Consulting, Inc. ("RRPC"), non-debtor entities of which Reinert was the sole shareholder prior to his filing for bankruptcy, and Eric Bononi, *Chapter 7 Trustee*, who now controls those shares pursuant to the Bankruptcy Code (collectively, "Plaintiffs"). Arguing that they are the rightful owners of certain assets at issue in the adversarial proceeding and that their interest in the

property would not be protected without their participation, Plaintiffs filed a Motion to Intervene in the adversarial proceeding pending in the Bankruptcy Court. Id. at Doc. No. 72. On July 31, 2012, a hearing was held on Plaintiffs' Motion to Intervene before United States Bankruptcy Judge Jeffrey A. Deller. Finding that Plaintiff's Motion to Intervene was untimely, Judge Deller denied Plaintiffs' Motion on that same date. See ECF No. 14-1. Plaintiffs subsequently filed the instant action on August 16, 2012, bringing largely the same claims against MFA that it sought to raise in the adversarial proceeding had they been allowed to intervene. See ECF No. 1.

MFA has now filed a Motion to Refer Case, or in the Alternative, to Dismiss Plaintiffs' Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) ("the Motion to Refer"), ECF No. 8, arguing, *inter alia*, that because Plaintiff's claims directly relate to MFA's claims brought against Reinert in the Bankruptcy Court, the case should be referred to the Bankruptcy Court for resolution pursuant to 28 US.C. § 157. For the reasons that follow, the Motion to Refer will be granted.

**DISCUSSION**

Under Title 28 of the United States Code, Section 157(a), "[e]ach district court may provide that . . . any or all proceedings *arising under* title 11 [i.e. the Bankruptcy Code] or *arising in* or *related to* a case under title 11 shall be referred to the bankruptcy judges for this district." 28 U.S.C. § 157 (emphasis added). See In re Combustion Engineering, Inc., 391 F.3d 190, 225 (3d Cir. 2004), *quoting* Celotex Corp. v. Edwards, 514 U.S. 300, 308 (1995) ("[s]ection 157(a) . . . permits district courts to refer most matters to a bankruptcy court," thereby allowing the "bankruptcy courts to 'deal efficiently and expeditiously with all matters connected with the bankruptcy estate'"). Pursuant to this authority, the judges of the United States District Court for the Western District of Pennsylvania have adopted a standing Order of Reference of Bankruptcy Cases and Proceedings which provides that "all proceedings *arising under* title 11 or *arising in*

or *related to* a case under title 11 . . . be and they hereby are referred to the Bankruptcy Judges of this district for consideration and resolution." See www.pawd.uscourts.gov: Standing Orders (emphasis added).

Conversely, 28 U.S.C. § 157(b)(1) permits Bankruptcy judges to hear and adjudicate "all core proceedings *arising under* title 11 . . . or *arising in* a case under title 11 . . . referred under subsection (a) of this section." Id. (emphasis added). The Bankruptcy Court also has jurisdiction over non-core proceedings that are "otherwise *related to* a case under title 11." 28 U.S.C. § 157(c)(1) (emphasis added). The United States Court of Appeals for the Third Circuit has described the jurisdictional scheme as follows:

> [P]roceedings "arising under" title 11 or "arising in" title 11 cases are "core." *See, e.g., Barnett v. Stern*, 909 F.2d 973, 981 (7th Cir.1990) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."). By contrast, proceedings which are "related to" a bankruptcy case are non-core. *See In Re Meyertech Corp.*, 831 F.2d 410, 416 (3d Cir. 1987); *In re Wood*, 825 F.2d 90, 96-97 (5th Cir.1987) ("If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be related to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an 'otherwise related' or non-core proceeding."); *In re Yobe*, 75 B.R. 873, 875 (Bankr. W.D. Pa.1987) (drawing a distinction between "core" and "related" proceedings).

Phar-Mor, Inc. v. Coopers & Lybrand, 22 F.3d 1228, 1234-35 (3d Cir. 1994). Under the latter circumstances, however, the bankruptcy judge may not enter judgment absent consent of the parties but, rather, must submit findings of fact and conclusions of law for the district court's consideration and de novo review of any matter to which a party has objected. Id. at 1235. See 28 U.S.C. § 157 (c)(1) & (2).

Because "non-core" or "related to" jurisdiction sweeps with the broadest brush, this Court need only decide whether the instant case is related to the bankruptcy proceeding. See In

3

re Resorts Intern., Inc., 372 F.3d 154, 163 (3d Cir. 2004), *quoting* In re Marcus Hook Dev. Park, Inc., 943 F.2d 261, 266 (3d Cir. 1991) ("we need not resolve whether this is a 'core' proceeding for subject matter jurisdictional purposes because '[w]hether a particular proceeding is core represents a question wholly separate from that of subject-matter jurisdiction'"); In re Reed, 94 B.R. 48, 51 (E.D. Pa. 1988) ("[w]hether a proceeding is core or non-core affects the power of the bankruptcy judge to issue a final order or judgment . . . but not the ability to hear the proceeding").

> [T]he test for determining whether a civil proceeding is related to bankruptcy is whether the *outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy....* Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984), *overruled on other grounds by* Things Remembered, Inc. v. Petrarca, 516 U.S. 124 (1995) (emphasis in original; citations omitted). See In re W.R. Grace & Co., 591 F.3d 164, 171 (3d Cir. 2009). See also Lichtenfels v. Electro-Motive Diesel, Inc., 2010 WL 653859, at *3 (W.D. Pa. Feb. 22, 2010), *quoting* Halper v. Halper, 64 F.3d 830, 837 (3d Cir. 1999) ("[t]he term, 'conceivable,' in the *Pacor* test is a key component to making a determination about jurisdiction. . . . 'Conceivable' does not simply mean that a proceeding will have a certain or likely impact upon a bankruptcy estate, but that 'it is *possible* that a proceeding may impact the debtor's rights, liabilities, options, or freedom of action, or the handling and administration of the bankrupt estate'") (emphasis added).

In the instant case, Plaintiffs have brought state law claims against MFA for conversion, fraud/fraudulent inducement, reformation, unfair competition and a claim under the Lanham Act, 15 U.S.C. § 1125(a), for false designation/false description. See ECF No. 1. Each of these

4

claims is premised on Plaintiffs' assertion that MFA erroneously listed assets owned by Plaintiffs on the exhibits to the Credit Bid Agreement as being subject to the asset sale and that, because Plaintiffs were not amongst the Reinert entities that were in bankruptcy ("the Debtor entities"), those assets were not subject to the sale. As such, Plaintiffs claim that they remain the rightful owners of those assets and that MFA has wrongfully taken control of them.

The question of what assets were subject to the asset sale and what entity rightfully owns those assets, however, was also at the heart of the claims raised by MFA in the adversarial proceeding brought against Reinert as well as the Motion to Intervene filed by Plaintiffs in the Bankruptcy Court. See Bankr. Adversary No. 11-ap-2656, Doc. No. 1-1. Specifically, MFA brought claims against Reinert for misappropriation of trade secrets, intentional interference with existing contractual and potential business relations, unjust enrichment, conversion and restitution based on MFA's position that it acquired all of the assets owned by Reinert relating to the metal foundations business including confidential trade secrets. Reinert disagreed taking the position that the assets owned by Plaintiffs SFI and RRPC, which were not in bankruptcy, were not part of the Credit Bid Agreement and were not sold at the asset sale. See Bankr. Adversary No. 11-ap-2656, Doc. No. 34.

Moreover, the claims presently before this Court mirror those that Plaintiffs asked the Bankruptcy Court to adjudicate in their proposed Third Party Complaint attached to its Motion to Intervene, namely, conversion, fraud/fraudulent inducement, reformation and unfair competition. Compare Bankr. Adversary No. 11-ap-2656, Doc. No. 74-1 with ECF No. 1. Coupled with Plaintiffs' representations to this Court in their brief in opposition to MFA's Motion to Refer that it attempted to intervene in the adversary proceeding "in order to bring the claims asserted in this case before the Bankruptcy Court," and that they would have preferred to have had their claims

heard by the Bankruptcy Court during the trial on the adversary case, it is difficult for the Court to find that the claims raised here are not "related to" the bankruptcy proceedings.[1] See ECF No. 14, pp. 1-2, 7, 20.  Indeed, the question of what assets were purchased by MFA or, more importantly, what assets were *not* purchased by MFA and remain under Plaintiffs and/or Reiner's control would seemingly impact what assets are a part of Reinert's bankruptcy estate and that of the Debtor entities and effect their administration.  In fact, Plaintiffs do not appear to dispute that this case will have an impact on the administration of Reinert's bankruptcy estate and the determination of what assets may or may not be a part of that estate.  See id. at p. 15.  This Court, therefore, is compelled to conclude that this case is *related to* the estates being administered in the Bankruptcy Court and is properly referred there.

Plaintiffs nevertheless argue that the inclusion of its claim brought under the Lanham Act precludes this case from being referred to the Bankruptcy Court as withdrawal of the reference would be mandated under 28 U.S.C. § 157(d).

Section 157(d) provides that: "[t]he district court shall . . . withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 . . .and other laws of the United States regulating organizations or activities affecting interstate commerce."  Because the Lanham Act regulates activities affecting interstate commerce, Plaintiffs argue that their case is properly adjudicated in district court. The cases interpreting § 157(d), however, largely hold that, although the language of Section 157(d) is unquestionably broad, it should nevertheless be narrowly read.  The mere fact that resolution of the matters in question calls for consideration of both bankruptcy law and other federal laws is insufficient.  In re Merryweather Importers, Inc., 179 B.R. 61, 62 (Bankr. D. Md. 1995).  See In re Homeland

---

[1] Moreover, counsel for Reinert argued at the hearing on the Motion to Intervene that intervention was warranted to avoid two trials in which the same evidence would be presented.  ECF No. 14-1, p. 34.

Stores, Inc., 204 B.R. 427, 430 (Bankr. D. Del. 1997). Rather, it has been held that mandatory withdrawal under Section 157(d) should be made only where substantial and material consideration of non-bankruptcy statutes is necessary to resolve the case. Id. See In re Kuhlman Diecasting Co., 152 B.R. 310, 311-12 (Bankr. D. Kan. 1993) (reviewing cases and stating majority rule). Thus, where the case involves a "straightforward application of federal statutes to a particular set of facts," it is generally excluded from mandatory withdrawal. Only cases involving federal questions that are complex or are of first impression should be withdrawn from the reference. Id.

Here, Plaintiffs' claim brought under the Lanham Act for unfair competition necessarily turns on the issue of asset ownership and what assets were purchased by MFA. See Health and Body Store, LLC v. Justbrand Ltd., 480 F. App'x 136, 145 n.15 (3d Cir. 2012), *quoting* E.T. Browne Drug Co. v. Cococare Prods., Inc., 538 F.3d 185, 191 (3d Cir. 2008) (citation omitted) ("[i]n order to succeed on a false designation of origin or unfair competition claim under the Lanham Act, a plaintiff must prove that: '(1) the mark [it seeks to protect] is valid and legally protectable, (2) [the plaintiff] owns the mark, and (3) the defendant's use of the mark is likely to create confusion concerning the origin of goods or services' associated with the mark"). Plaintiffs' Lanham Act claim, therefore, cannot be resolved without first determining whether MFA purchased the good will and/or trade secrets of Reinert's companies and, if so, which ones. Having already decided that this issue is properly before the Bankruptcy Court, it follows that Plaintiff's claim under the Lanham Act is properly before the Bankruptcy Court as well. Indeed, once it is determined what assets, if any, remain in Plaintiffs' control, resolution of Plaintiffs' Lanham Act claim would not be so difficult or complex that the Bankruptcy Court is unable to address them without being unduly burdened. Moreover, claims for unfair competition under the

Lanham Act are certainly not new to the Bankruptcy Court.  See e.g. In re Specialty Foods of Pittsburgh, Inc., 91 B.R. 364 (Bankr. W.D. Pa. 1988); In re New York City Shoes, Inc., 84 B.R. 947 (Bankr. E.D. Pa. 1988); In re Allegheny Health, Educ. & Research Found., 1999 WL 1051211 (Bankr. E.D. Pa. Feb. 1, 2000).

This Court also finds it compelling that the question of asset ownership as between MFA and Reinert (and seemingly Plaintiffs), has already been adjudicated by the Bankruptcy Court. Judge Deller issued a Memorandum Opinion and Order on October 15, 2012, finding that "MFA purchased *all of the assets related to the metal foundations business* as provided for in the Asset Sale and Credit Bid Agreement . . . *regardless of whether they were owned by other Reinert controlled entities (such as SAFE Foundations, LLC)*." ECF No. 9-4, p. 2; Bankr. Adversary No. 11-ap-2656, Doc. Nos. 172, 173 (emphasis added).  In fact, Judge Deller also found that "Reinert is estopped from asserting that non-debtor entities own the assets sold to MFA." Id.  Although, as argued by Plaintiffs, Judge Deller made no specific finding as to whether *Plaintiffs* were owners of any of the assets purportedly acquired by MFA, it can certainly be reasonably inferred from Judge Deller's ruling that MFA acquired Plaintiffs' assets relating to the metal foundations business as well.

However, even if Judge Deller's Order could be read as having left open the question of whether Plaintiffs owned any of the assets subject to the asset sale, it does not negate the fact that resolution of the issue could conceivably have an effect on what assets are part of Reinert's bankruptcy estate and/or that of the Debtor entities and the manner in which the estates are administered.  This is particularly true as Reinert, the sole shareholder of SFI and RRPC, consented to the entry of a final order in the Bankruptcy Court with respect to claims arising out

of MFA's transaction with Reinert and his companies. Under these circumstances, the Court is unable to conclude that the instant case is unrelated to the bankruptcy proceedings.

Finally, it is this Court's opinion that principles of judicial economy and the need for uniformity require that this case be referred to the Bankruptcy Court. Reinert's personal bankruptcy and the bankruptcies of the Debtor entities have been pending for approximately nineteen months in Bankruptcy Court; the asset sale was approved and consummated by the Bankruptcy Court; and MFA's Complaint in Equity was heard in the Bankruptcy Court where Reinert maintained, just as the Plaintiffs have here, that MFA did not purchase all of the assets included in the Credit Bid Agreement as they are actually owned by SFI and/or RRPC.

More importantly, Judge Deller has already decided the very issue upon which Plaintiffs' instant claims are premised, *i.e.*, that "MFA purchased all of the assets related to the metal foundations business . . . regardless of whether they were owned by other Reinert controlled entities (such as [SFI])." Any ruling by this Court in resolving Plaintiffs' present claims would either be redundant or inconsistent with Judge Deller's ruling. Thus, the Bankruptcy Court's extensive knowledge of this case and the fact underlying this dispute as well as principles of uniformity appear to dictate that this case be referred to the Bankruptcy Court. See Clark v. Chrysler Group, LLC, 2010 WL 4486927, at *9 (E.D. Pa. Nov. 5, 2010) (finding that transfer to the Bankruptcy Court promoted judicial economy and reduce[d] the risk of an inconsistent interpretation of [the Sale Order]).

**CONCLUSION**

For the foregoing reasons, the following Order is entered:

AND NOW, this 20th day of December, 2012, IT IS HEREBY ORDERED that the

Motion to Refer Case, or in the Alternative, to Dismiss Plaintiffs' Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), ECF No. 8, is GRANTED insofar as MFA has asked that the case be referred to the Bankruptcy Court.  IT IS FURTHER ORDERED that the Clerk is to transfer the case to the Bankruptcy Court forthwith.

                BY THE COURT,

                <u>/s/ Maureen P. Kelly</u>
                Maureen P. Kelly
                United States Magistrate Judge

cc:     Counsel of Record Via CM-ECF